MR. JUSTICE SHEEHY
dissenting:
At the base of this Court’s decision and that of Judge Freebourn in the condemnation action was the contention of the Anaconda Company that unless the Schara property were acquired by the company, the company’s mining operations would be reduced from 20 years in the Butte area to 6 to 7 years of active life and we are told “this obviously would be disastrous for the public good of Butte-Silver Bow, Deer Lodge Counties and the State of Montana.”
The closing threat is not new. It seems to me that I have heard this song before. It is from an old familiar score. We can only be sure that the decision to go or remain will not be dependent on the Schara property.
Judge Freebourn, when this Court forced him by mandate to make final findings of fact and conclusions of law so as to override Judge Olsen’s restrictive covenant decision, found that “for dumping purposes” and to continue its mining operations for some 14 or 15 years, Anaconda has sufficient land already. Therefore he saw no need for the Schara property until some 14 or 15 years in the future and concluded that to permit condemnation now would deny them just compensation for the use of their land.
Although Rule 52, M.R.Civ.P. makes it mandatory that findings of a District Court shall not be set aside unless clearly erroneous, this Court through the majority opinion not only sets Judge Free-bourne’s findings aside, but proceeds to make findings of its own. There is ample support in the record that the Anaconda company owns a considerable area of land which could be used for dumping purposes, established in the cross-examination of Wilbur Crisswell. Moreover, Judge Freebourn had before him the testimony regarding the East Continental Pit. The old highway leading to Woodville *392 had been closed to permit the opening of the East Continental Pit, upon the representation that such closing of the highway would extend Butte’s mining life for 22 years. East Continental Pit was abandoned after 2 years.
As a second point, I cannot permit myself to sign an opinion which finds it “reasonable” for eminent domain power to be granted to open-pit hard rock mining companies, but to be denied to open-pit coal mining companies. Every reason stated for denying eminent domain power to the coal mining industry in section 70-30-106, MCA, applies with equal force to the copper mining industry. There is no real distinction between an open-pit copper mine and an open-pit coal mine, except that the legislature favored cows over people. We give mere lip service to the equal protection clause of the federal constitution when we find a distinction without a difference in section 70-30-106.
For these reasons, I dissent.